☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  22-932M(NJ) |
| information associated with the cellular telephone | ) | |
| assigned call number (414) 484-0342 through | ) | **Matter No.: 2022R00268** |
| T-Mobile, fully described in Attachment A. | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      August 17, 2022      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Honorable Nancy Joseph      .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      August 3, 2022 @ 10:10 a.m.

*Judge's signature*

City and state:      Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the cellular telephone assigned call number **(414) 484-0342** (referred to in attachment B as "the Account"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

15

## ATTACHMENT B (414-202-7909)

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the following dates: January 1, 2022 through July 26, 2022:

A.      The following information about the customers or subscribers of the Account:

1.      Names (including subscriber names, user names, and screen names);

2.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.      Local and long distance telephone connection records;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5.      Length of service (including start date) and types of service utilized;

6.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 922(a)(6), False Statement as to Material Fact to a Federal Firearms Licensee (FFL), Title 18 U.S.C. § 922(a)(1)(a), Dealing Firearms Without a License, Title 18 U.S.C. § 924(a)(1)(a), Knowingly Making a False Representation, and Title 18 U.S.C § 922(d)(1), Sale/Transfer of a Firearm to a Prohibited Person involving ROBERT WATSON BOWERS, during the period of January 1, 2022, through May 20, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers to locate the things particularly described in this Warrant.

17

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>information associated with the cellular telephone<br>assigned call number (414) 484-0342 through T-Mobile,<br>fully described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)  Case No. 22-932M(NJ)<br>**Matter No.: 2022R00268** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A); § 922(a)(6)/924(a)(1)(A); and § 922(d)(1) | Engaging in the Business Without a License (Firearms); False Statement During the Purchase of a Firearm; and Sale/Transfer of a Firearm to a Prohibited Person |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Brendan Mulvey, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:  8/3/2022

_____
*Judge's signature*

City and state:     Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEACH WARRANT

I, Brendan Mulvey, being first duly sworn on oath, on information and belief state:

**I.      INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone's assigned call number:

      a.    **(414) 484-0342**, ("**Target Cell Phone**"), that is stored at the premises controlled by T-MOBILE, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      T-Mobile will be referred to as the "Service Provider." The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and have been since June of 2018. I have successfully completed the Criminal Investigator Training Program and ATF Special Agent Basic Training at the ATF National Academy, held at the Federal Law Enforcement Training Center. As an ATF Agent, I have conducted numerous investigations involving violations of federal and state laws including violations of 18 U.S.C. § 924(c), possession of a firearm in furtherance of a federal drug trafficking crime, and 21 U.S.C. §§ 841(a)(1) and 846, distributing and conspiracy to distribute a controlled substance.

4.      Based upon my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

5.      To this end, based upon my training and experience, I know that individuals involved in firearms straw purchasing and/or firearms trafficking use cellular telephones to maintain contact with individuals whom they are purchasing firearms on behalf of, as well as co-conspirators, aurally or via electronic message in "text" format. I also know that it is common for suspects engaged in firearms straw purchasing/trafficking to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Agents, law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that on or about May 28, 2022, on or about May 31, 2022, on or about June 28, 2022, ROBERT WATSON BOWERS Jr. (dob: 07/04/1997) committed violations of Title 18 U.S.C. § 922(a)(6), False Statement as to Material Fact to a Federal Firearms Licensee (FFL), Title 18 U.S.C. § 922(a)(1)(a), Dealing Firearms Without a License, Title 18 U.S.C. § 924(a)(1)(a), Knowingly Making a False Representation, and Title 18 U.S.C § 922(d)(1), Sale/Transfer of a Firearm to a Prohibited Person. I further submit that there is probable cause to believe that evidence of WATSON BOWERS and others' involvement in the robberies will be recovered in the records that are sought herein.

## II.    PROBABLE CAUSE

1.    In July 2022, ATF was made aware of a fatal shooting that occurred at 1134 N. 20th St, Apartment 101, in the city and county of Milwaukee, ("the Incident Location" herein) which resulted in the death of a three-year-old victim.

2.    Investigators from the Milwaukee Police Department (MPD) responded to the scene and located the victim laying face-up on the living room floor with apparent gunshot wound to the head. Also upon arrival, as emergency first aid was being rendered to the victim, additional responding officers began conducting a protective sweep for the presence of any threats that may be present on scene. While conducting a sweep of the basement door located immediately adjacent to the incident location, MPD Officers located a red and black Nike duffle bag concealed behind the basement door containing a [1] Kimber, model Aegis Elite Custom, .45 caliber pistol, bearing serial number K674765 ("the Kimber" herein), a [2] Glock, model 19X, 9mm caliber pistol, bearing serial number BUYX063 ("the Glock 19X" herein), and a [3] Glock, model 17 Gen. 4, 9mm caliber pistol, bearing serial number SCY886 ("the Glock 17" herein), a brown in color magazine containing ten [10] rounds of ammunition, as well as various packages of suspected marijuana. While rendering the weapons safe, MPD Officer observed the Glock 19X to have a spent cartridge casing located inside the chamber which was not properly ejected from the port. It should also be noted that no casings were located inside the residence where the shooting occurred. Therefore, your affiant concludes that the Glock 19X was the firearm utilized in the fatal shooting.

3.    ATF E-Traces were subsequently conducted on all of the recovered firearms. In doing so, ATF identified the Glock 19X to have been originally purchased by WATSON BOWERS from Federal Firearms Licensee (FFL) Select Fire Weaponry, located at 2325 Parklawn Dr, Suite B, Waukesha WI 53186, on June 28, 2022. Your affiant observed the firearm's time-to-

crime/time-to-recovery (TTC/TTR) to be 3-days. Furthermore, the Glock 17 was also identified to have been purchased by WATSON BOWERS from Select Fire Weaponry on May 28, 2022. Your affiant observed the firearm's TTC/TTR to be 34-days.

4.      MPD Investigators then conducted an on-scene interview of the victim's mother Shantia JONES (DOB: XX/XX/XXXX) regarding the incident. JONES informed MPD that she, along with her live-in boyfriend Raheem Deon MOORE (DOB: XX/XX/XXXX), her sister XXXXX WALKER (DOB: XX/XX/XXXX), and her two children to include the victim had been at the apartment for the past two [2] days. JONES stated that there are several firearms inside the residence. JONES stated that she went to sleep at approximately 2300 hours the night before on June 30, 2022. JONES stated that her son (the victim) was already asleep in his bedroom, along with his brother, and WALKER at the time she went to sleep. JONES stated that MOORE was still awake in the living room watching television when she went to bed. JONES stated she was awoken by the sound of a gunshot at approximately 0430 hours and ran out of her room and located the victim on the floor in the living room near where MOORE was still sleeping on the couch. JONES stated that MOORE then departed the scene prior to police arrival because he was a convicted felon. A criminal history check of MOORE confirmed his status as a convicted felon based on his conviction of 2nd Degree Reckless Homicide – Party to, which was filed in Milwaukee County on October 13, 2008.

5.      MPD Investigators then questioned JONES as to who the owner of the Nike duffle bag was, to which she explained the bag belonged to MOORE, and that she had previously seen him with the bag on several occasions. JONES also informed MPD that she had an unspecified .380 caliber pistol stowed behind her television in her bedroom that she observed prior to and immediately after the shooting, however, the pistol had since gone missing.

6.     Investigators then obtained written consent from JONES to conduct a search of the residence.

7.     Investigators subsequently recovered multiple items of evidentiary value inside the Southeast bedroom of the residence. More specifically, located in the top dresser drawer inside the Southeast closet of the bedroom along the East wall was a wallet containing two [2] Wisconsin identification cards for MOORE. Also located inside the same drawer was a Glock magazine containing one [1] round of ammunition, one [1] box containing eighteen [18] rounds of .40 caliber ammunition, a plastic sandwich bag containing eighteen [18] rounds of 9mm caliber ammunition, one [1] box containing thirty-one [31] rounds of 5.7x28mm caliber ammunition, one [1] round of .223 caliber ammunition, as well as US currency. Also located inside the Southeast closet on top of the shelf was an empty brown in color, unknown brand, gun box containing a purchase receipt with the name WATSON BOWERS for the purchase of a Glock, model 21 Gen. 3, bearing serial number BFFH772 ("the Glock 21" herein). The receipt was observed to be affixed to a copy of a Wisconsin Department of Justice Firearms Dealer Notification (Handgun Transfers) Form completed by WATSON BOWERS on June 24, 2022. Your affiant noted the Glock 21 to have been purchased just seven [7] days prior to the receipt/Wisconsin Handgun Form being recovered by law enforcement on the date of the incident. Also recovered from beneath the bed inside the Northeast bedroom was an empty black in color Glock brand gun box with an identified serial number of BUPB587. Your affiant identified the box to belong to a Glock, model 19, 9mm caliber pistol, bearing the aforementioned serial number BUPB587, which was purchased by WATSON BOWERS on May 31, 2022, from Select Fire Weaponry, located at 2325 Parklawn Dr, Suite B, Waukesha WI 53186. Your affiant also observed the purchase to prompt a Multiple Sale Report as WATSON BOWERS had purchased the Glock 17 within five [5] business days of the May 31,

5

2022, purchase. Your affiant is aware that the Gun Control Act of 1968 requires FFL's to report to the ATF when there is a sale of multiple handguns to the same purchaser during a single transaction, or within five [5] consecutive business days of each other. These types of transactions are commonly referred to as "multiple sales."

8.    To date, ATF has identified WATSON BOWERS to have engaged in four [4] separate transactions, in which a total of four [4] firearms were purchased. Your affiant observed all purchases to have occurred at FFL Select Fire Weaponry, which is located in the Eastern Judicial District of Wisconsin. Your affiant noted all four [4] firearms purchased by WATSON BOWERS to be Glock brand pistols, three [3] being of similar model and caliber. Your affiant is aware that multiple purchases of the same/similar type/model/caliber firearm in a short period of time is often indicative of firearms trafficking as opposed to firearms collecting. Furthermore, ATF has reason to believe that WATSON BOWERS has engaged in firearms straw purchasing on behalf of MOORE.

9.    As part of this investigation, your affiant obtained ATF Form 4473 paperwork completed by WATSON BOWERS during all identified firearm purchases from Select Fire Weaponry. Your affiant reviewed the documents and observed WATSON BOWERS to provide a residential address of 3371 N. 5th St, Milwaukee, WI 53212, in Section B Question 10 on the form during all transactions. Your affiant also observed WATSON BOWERS to mark "Yes" when answering question 21. a. located in Section B on each form which reads:

> "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.** Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer question 21. a. and may proceed to question 21. b."

10.     Your affiant also observed WATSON BOWERS to provide his signature in box 22. on each form, certifying that the information provided in Section B of the form is true. Further, by signing, WATSON BOWERS understood it would be a violation of Federal law to answer "Yes" to question 21. a. if he was not in fact the actual transferee/buyer of the firearm, and that he would be committing a felony violation by misrepresenting himself as the actual purchaser. WATSON BOWERS also certified that he understood, "that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law."

11.     Also, as part of this investigation, your affiant obtained copies of the Wisconsin Department of Justice Firearms Dealer Notification Form's completed by WATSON BOWERS during all identified firearm purchases. Your affiant is aware that FFL's are required by Wisconsin state law to have customers complete this form prior to engaging in the sale/transfer of a handgun. Upon reviewing the forms, your affiant observed WATSON BOWERS to write "Yes" next to question 16. a. on the form which reads:

> "Are you the actual purchaser of the firearm? You are the actual purchaser if you are not purchasing the firearm at the request of, or on behalf of, any other person or are not purchasing the firearm with the purpose or intent of reselling the firearm to any other person."

12.      Furthermore, your affiant observed WATSON BOWERS to write "No" next to question 16. b. on each form which reads:

> "Are you purchasing the firearm with the purpose or intent to transfer the firearm to a person who is prohibited from possessing a firearm under state or federal law? WARNING: TRANSFER TO MINORS, FELONS, AND PROHIBITED PERSONS. It is illegal for anyone to provide or assist in providing any firearm to a minor, except under conditions as set forth in the Wisconsin statutes, and under any circumstances to provide or assist in providing any firearm to a convicted felon or any other person prohibited by law from possessing a firearm under s. 941.29. Criminal prosecution may

result in up to a $25,000 fine and up to 10 years imprisonment under s. 941.2905."

13.     Your affiant also observed WATSON BOWERS to provide the telephone number **(414) 484-0342** as his point of contact alongside his signature at the bottom of Section 1 on each form. Upon providing his signature, WATSON BOWERS certified that the information provided on the form was true. As part of this investigation, your affiant conducted a records check of the aforementioned telephone number for unofficial subscriber information using law enforcement databases and observed WATSON BOWERS to list as the likely user of the assigned number.

14.     In obtaining these documents, Select Fire Weaponry also provided ATF with a store purchase policy statement which was also signed by WATSON BOWERS at the time of firearm purchase. FFL XXXX XXXXXX of Select Fire Weaponry informed your affiant that this is a new practice implemented by the store and that the store began requiring the completion of the form in June 2022 prior to engaging in the transfer of a firearm. FFL XXXXXX stated that WATSON BOWERS completed this form during both the June 24, 2022, and the June 28, 2022, firearm purchases. The policy lists a series of terms and conditions that a purchaser must agree to prior to Select Fire Weaponry processing a transaction. Upon reading the form, your affiant observed Paragraph 2 to stipulate the that the purchaser must provide an accurate place of residence and that the address provided must also be reflected on a valid state issued identification card, or other state issued legal document. Failure to provide physical proof of current residence/address would result in Select Fire Weaponry not facilitating the sale of a firearm. Your affiant also observed Paragraph 3 to warn the purchaser against engaging in straw purchasing activity. Specifically, Paragraph 3 states the following:

> **"ANY ATTEMPT TO STRAW PURCHASE A GUN (BUYING A GUN FOR SOMEONE ELSE) WILL BE REPORTED TO FEDERAL, STATE, AND/OR LOCAL AUTHORITIES. IF WE SUSPECT AT ANY POINT**

8

**THAT THIS IS OCCURRING, WE WILL IMMEDIATELY CANCEL THE TRANSACTION, REPORT TO THE AUTHORITIES MENTIONED ABOVE, AND ANY PAYMENT WILL NOT BE REFUNDED."**

15.     The policy also warned the purchaser against providing any false or inaccurate information on the ATF Form 4473 and/or State of Wisconsin Handgun Form, and that doing so may result in Federal/State/Local prosecution. WATSON BOWERS then provided his initials agreeing that the information provided on the forms were accurate.

16.     The policy also required the purchaser to agree to the terms and conditions detailed on the policy and to proceed with a non-refundable payment. WATSON BOWERS then provided his initials, agreeing to said terms. WATSON BOWERS also provided his name, signature, and phone number at the bottom of the form, certifying that he read and accepted the store purchase policy.

17.     Lastly, in acquiring these documents, your affiant also obtained copies of the bills of sale for all purchases made by WATSON BOWERS from Select Fire Weaponry. In doing so, your affiant observed WATSON BOWERS to have expended a total of $2,361.18 USC (tax included), in mostly cash payments, in firearms purchases. Your affiant also noted WATSON BOWERS to have engaged in all four [4] transactions within a one [1] month timeframe, with the first identified purchase occurring on May 28, 2022, and the last on June 28, 2022.

18.     In obtaining these records, your affiant again spoke with FFL XXXXXX of Select Fire Weaponry. FFL XXXXXX informed your affiant that the store retained video footage that recorded WATSON BOWERS visits during all identified purchases. FFL XXXXXX also informed your affiant that on each occasion, WATSON BOWERS arrived at the store driving a silver in color Nissan sedan, with unknown registration. Your affiant then traveled to Select Fire Weaponry and reviewed the footage with FFL XXXXXX. Your affiant observed the vehicle

operated by WATSON BOWERS during his firearm purchases and believed it to be a silver in color Nissan Altima.

19.     Continuing on July 20, 2022, your affiant engaged in a surveillance operation at the Target Residence. During the operation, your affiant observed a black, male, adult, whom he believed to be WATSON BOWERS based on reviewing his Wisconsin state issued driver's license photo, exit the residence and enter the driver's seat of a silver in color Nissan Altima bearing WI registration plate AEC-1537, which was parked in front of the Target Residence on the east side of the street facing northbound. Your affiant observed the vehicle to match that as the one captured by surveillance footage from Select Fire Weaponry on the dates of WATSON BOWERS firearm purchases. Your affiant then observed the vehicle depart travelling northbound on N. 5th St. before disappearing from view.

20.     Also, as part of this investigation, investigators obtained and served a Federal Grand Jury Subpoena to **T-Mobile** for records pertaining to the suspect telephone number **(414) 484-0342**. Upon obtaining these records, ATF learned the subscriber for the suspect telephone number to be "Robert Watson Bowers." The account number was observed listed as 972438522, and shows it as being active since January 26, 2021. The account is billed to WATSON BOWERS and lists his date of birth as being July 4, 1997, and social security number (SSN) as 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. Lastly, it lists WATSON BOWERS cellular telephone to bear IMEI # 351793393021162.

21.     On July 25, 2022, your affiant obtained a Federal search warrant for the residence and associated vehicle(s) of WATSON BOWERS, which was authorized by the Honorable Stephen C. Dries, United States Magistrate Judge. ATF subsequently executed the search warrant the following day, on July 26, 2022.

22.     At the time of execution, ATF Special Agents and assisting MPD personnel surrounded the residence and Special Agents positioned outside the front entry door began a "knock and announce" procedure, in which they articulated their presence as law enforcement and that they possessed a search warrant. Eventually, the door was opened by a black female adult, later identified as XXXX XXXXXXX (DOB: XX/XX/XXXX), who was then escorted by law enforcement out of the residence towards N. 5th St. Moments later, a black male adult, whom your affiant recognized to be WATSON BOWERS, emerged from the top of the stairwell from the part of the residence where the bedrooms are located. WATSON BOWERS was then detained and escorted outside the residence away from ATF entry units.

23.     Once the residence was deemed clear of additional occupants, your affiant met with WATSON BOWERS who was standing outside of the residence near N. 5th St. WATSON BOWERS then confirmed with your affiant that 3371 N. 5th St. was his primary residence, and that he sleeps on the couch located in the first floor living room area. Your affiant then asked WATSON BOWERS if his mobile cell phone would also be found in this location, to which he stated it would. Your affiant then re-entered the residence and observed a blue in color Apple I-Phone cellular telephone, bearing IMEI # 351793393021162, plugged into a charging port along the North-side living room wall. Your affiant then dialed the target telephone number **(414) 484-0342** using his government issued cell phone. Your affiant then observed the mobile device to receive an incoming call with a displayed caller ID of "W Candia San Ramon, CA" (See Figure 1). It should be noted that your affiants government issued telephone number has an assigned area code of "925", which is the designated area code of San Ramon, California. Your affiant subsequently determined the target cell phone and the recovered mobile device to one and the same.



**Figure 1**

8.　　Your affiant is also requesting the subscriber information, call detail records, text message connection records, text message content information, specialized location records, and cloud storage records for target telephone number **(414) 484-0342** for the timeframe of January 1, 2022 at 12:00 a.m.(CST) to July 26, 2022 at 11:59 p.m. (CST).

**IV.　　CELL SITE DATA**

9.　　In my training and experience, I have learned that the Service Providers are companies that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including

cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

10. Based on my training and experience, I know Service Providers can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phone to which they provide service in their normal course of business in order to use this information for various business-related purposes.

11. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes

under investigation because the information can be used to identify the **Target Cell Phone** user or users and may assist in the identification of co-conspirators and/or victims.

## V. AUTHORIZATION REQUEST

12. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

13. I further request that the Court direct Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the cellular telephone assigned call number **(414) 484-0342** (referred to in attachment B as "the Account"), that is stored at the premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

## ATTACHMENT B  (414-202-7909)

## Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the following dates: January 1, 2022 through July 26, 2022:

    A.    The following information about the customers or subscribers of the Account:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.    Local and long distance telephone connection records;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.    Length of service (including start date) and types of service utilized;

        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        7.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 922(a)(6), False Statement as to Material Fact to a Federal Firearms Licensee (FFL), Title 18 U.S.C. § 922(a)(1)(a), Dealing Firearms Without a License, Title 18 U.S.C. § 924(a)(1)(a), Knowingly Making a False Representation, and Title 18 U.S.C § 922(d)(1), Sale/Transfer of a Firearm to a Prohibited Person involving ROBERT WATSON BOWERS, during the period of January 1, 2022, through May 20, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Providers to locate the things particularly described in this Warrant.